UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN NEWMAN, <br> *Plaintiff*, | ) <br> ) <br> ) | 3:20-CV-01257 (SVN) |
| v. | ) <br> ) | |
| HARC, INC., <br> *Defendant*. | ) <br> ) | September 16, 2022 |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Karen Newman ("Plaintiff") brought this action against her former employer, HARC, Inc., ("Defendant"), alleging violations of the Families First Coronavirus Response Act, 29 U.S.C. § 2620 (the "FFCRA"), and the Family and Medical Leave Act, 29 U.S.C. § 2612 *et seq.* (the "FMLA"). Plaintiff claims that she was improperly denied benefits under both statutes, ultimately requiring that she resign her position to care for a sick family member.

Currently before the Court is Defendant's Motion for Summary Judgment, ECF No. 47, arguing that there are no material issues of fact and that Defendant is entitled to judgement as a matter of law on each of Plaintiff's claims for relief. Plaintiff has conceded that summary judgment is appropriate in favor of Defendant on her claims under the FFCRA (Counts One and Two of her complaint), but opposes Defendant's motion as it relates to her FMLA interference claim (Count Three), arguing that there are material issues of fact such that judgment cannot be awarded to Defendant as a matter of law. ECF No. 60-1. Thus, the Court will consider only the arguments on Plaintiff's FMLA claim herein.

For the reasons described below, the Court grants summary judgment in favor of Defendant.

I.      FACTUAL BACKGROUND

The parties generally agree on the facts relevant to the present dispute. Defendant is an organization that provides support for individuals with intellectual and related disabilities, allowing them to enjoy a higher quality of life. Pl.'s Rule 56(a)2 St., ECF No. 60-2 ¶ 1. In 2017, Defendant hired Plaintiff as an administrative assistant. *Id.* ¶ 2. During the relevant time period, Plaintiff was working in the Birth to Three program, which is an early intervention program for children up to three years of age. *Id.* ¶¶ 3-4. Plaintiff's duties included entering treatment plans into Defendant's system and assisting the clinicians with any necessary paperwork. *Id.* ¶ 5. At the time Plaintiff stopped working for Defendant, her direct supervisor was Kimberly Paluska. *Id.* ¶ 6.

In June of 2020, Plaintiff requested seven days of vacation time between July 30, 2020, and August 7, 2020. *Id.* ¶ 23. Plaintiff provided no explanation as to the reason for this vacation request. *Id.* ¶ 24. Her request was initially denied, in compliance with Defendant's policy on paid time off approval, due to other coworkers having already been granted time off that week and Defendant's need to make sure the facility was adequately staffed. *Id.* ¶¶ 25, 26. After having her request denied, Plaintiff followed up with Ms. Paluska, informing her that she needed the time off to "take care of family personal medical treatment." *Id.* ¶ 27. Ms. Paluska advised Plaintiff that if she needed the time off for medical treatment, Plaintiff needed to make an application for leave under the FMLA. *Id.* ¶ 28. On July 14, 2020, Ms. Paluska followed up with Plaintiff and informed her that her vacation request could be approved for the Monday, Tuesday, and Wednesday that was requested, but she would be needed in the office that Thursday and Friday. *Id.* ¶ 29.

Despite this update, the next day, July 15, 2020, Plaintiff saw her doctor for the sole reason of having the FMLA paperwork completed and provided to Defendant. *Id.* ¶ 30. The paperwork,

in the section filled out by Plaintiff, identified the sick family member as Plaintiff's husband.  ECF No. 48-12 at 2.  Plaintiff's doctor is also her husband's doctor, though the last time Plaintiff's husband saw that doctor was in July of 2018.  ECF No. 60-2 ¶ 32.  The doctor's portion of the FMLA paperwork was completed but stated only that Plaintiff "needs 8 days to help family member who is sick."  *Id.* ¶ 33.  The paperwork provided that Plaintiff's family member would be incapacitated on the relevant dates, but it indicated that the family member: (1) would not be in the hospital; (2) was not prescribed medication; (3) did not need treatment visits more than once per year related to his/her medical condition; (4) did not require follow up treatments or time for recovery; (5) would not require care on an intermittent or reduced schedule; and (6) would not have episodic flare ups preventing the family member from participating in normal daily activities.  *Id.* ¶ 34.  Further, the space for the medical provider to "explain the care needed by the patient and why such care is medically necessary" was left blank.  *Id.*

After submitting this paperwork, Plaintiff's doctor's office called her, wanting to know if she knew someone named Annette.  *Id.* ¶ 35.  Plaintiff responded that she did, and her doctor's office told her they would "take care of what needs to be done."  *Id.*  Annette Hargrove was the acting president of Defendant during the relevant time period, and Plaintiff never instructed her doctor not to speak or provide any information to her.  *Id.* ¶ 36.  After placing this phone call to Plaintiff, Plaintiff's doctor provided additional paperwork to Defendant that was identical in all material respects to the doctor's original submission, except that it added a line stating that Plaintiff's husband had a "workup pending" for depression, anxiety, and fatigue.  *Id.* ¶ 37.  This is consistent with Plaintiff's complaint, which alleges that during the spring of 2020, her husband "was referred for testing and was required to attend numerous medical appointments in connection" with a heart condition and psychiatric issues.  *Id.* ¶ 38.

On July 21, 2020, Plaintiff had a meeting with Defendant's director of human resources and an advisor to the CEO. *Id.* ¶ 42. At this meeting, Plaintiff was informed that if she wanted her request for FMLA leave to be approved, she needed to provide more information. *Id.* Plaintiff did not want to provide more information, and instead, shortly after this meeting, resigned from her employment with Defendant effective immediately.[1] *Id.* ¶ 45.

While Plaintiff contends that she had scheduled doctor's appointments for her husband during the period in which she requested leave, it is undisputed that at the relevant time Plaintiff's husband had not actually had an appointment with his doctor since 2018, *id.* ¶ 39, and that during the time Plaintiff initially requested off for FMLA leave, her husband did not attend any medical appointments, *id.* ¶ 41.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654

---

[1] While it is undisputed that Plaintiff resigned shortly after this meeting, her motives for doing so are hotly disputed. Specifically, Plaintiff claims that she was forced to resign as a result of the denial of her FMLA leave, and thus she is entitled to compensation. Pl.'s R. 56(a)(2) St. ¶ 45. The Court is mindful of this dispute and, as relevant, analyzes it further below.

F.3d 347, 358 (2d Cir. 2011). When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.    DISCUSSION

A claim for interference of FMLA rights is available when an "employer has prevented or otherwise impeded the employees' ability to exercise rights under the FMLA." *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). To prevail on this claim, Plaintiff must establish: (i) that she was an eligible employee under the FMLA; (ii) that Defendant is an employer for purposes of the FMLA; (iii) that she was entitled to leave under the FMLA; (iv) that she gave notice to Defendant of her intention to take leave; and (v) she was denied FMLA benefits to which she was entitled. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). In the instant action, it is undisputed that Plaintiff was an eligible employee, that Defendant is an employer for FMLA purposes, and that Plaintiff gave notice of her intention to take FMLA leave. ECF No. 48 at 12. Therefore, the Court examines only whether Plaintiff was entitled to take FMLA leave, and, if necessary, whether she was denied such benefits.

Under the FMLA, an eligible employee is entitled to leave "in order to care for [her] spouse . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11). Where an

employee requests leave to care for a spouse, the FMLA allows the employer to seek a certification from a health care provider detailing the reasons leave is necessary. 29 U.S.C. § 2613.

The employee must provide a "complete and sufficient certification." 29 C.F.R. § 825.305(c). Such a certification will be sufficient if it details: (i) the date on which the serious health condition commenced; (ii) the probable duration of the condition; (iii) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and (iv) that the employee is needed to care for her spouse. 29 U.S.C. § 2613. The certification must provide "information sufficient to establish the family member is in need of care." 29 C.F.R. § 825.306. A family member needs care where, "for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor." 29 C.F.R. § 825.124. Once an employer requests a certification, that certification must be "complete and sufficient." 29 C.F.R. § 825.305(c).

A certification is considered insufficient if it is incomplete, or complete but the information provided is "vague, ambiguous, or non-responsive." *Id.* Where the employer deems a certification insufficient, the employee must be provided seven days to cure the insufficiency. *Id.* If the insufficiency remains uncured, the employer "may deny the taking of FMLA leave." *Id.* If Plaintiff's certification was deficient and never corrected, Defendant is entitled to summary judgment on Plaintiff's claim of FMLA interference. *Porter v. Donahoe*, 484 F. App'x 589, 591 (2d Cir. 2012) (affirming grant of summary judgment for the defendant where the plaintiff requested leave to care for his mother, submitted a deficient certification, was given the opportunity to correct it, and failed to correct it); *Blodgett v. 22 S. St. Operations*, No. 3:17-CV-766 (VAB), 2019 WL 2913844, at *5 (D. Conn. July 8, 2019), *aff'd sub nom. Blodgett v. 22 S. St.*

*Operations*, LLC, 828 F. App'x 1 (2d Cir. 2020) (granting summary judgment on FMLA interference claim based on plaintiff's insufficient certification).

It is undisputed that Plaintiff's husband's doctor submitted two separate FMLA certifications to Defendant. *See* Pl.'s Rule 56(a)2 St. ¶¶ 33, 37. The only difference between the two certifications was that the second certification added a statement that Plaintiff's husband had a "workup pending" for his health issues. *Id.* ¶ 37; ECF No. 40-12. The paperwork did note that Plaintiff's spouse would be incapacitated; somewhat confusingly, however, it also stated that he would not be admitted overnight in a healthcare facility, would not be prescribed medication, would not need treatment visits at least twice a year, would not require follow up visits, would not require care on an intermittent or reduced schedule, and would not suffer from episodic flare ups hindering his ability to participate in normal activities. Pl.'s Rule 56(a)2 St. ¶ 34; ECF No. 40-12 at 7–9. When asked to describe the care Plaintiff would provide, both certifications read: "taking care of all his physical needs." ECF No. 40-12 at 6. Similarly, in response to the question to describe other relevant medical facts for which the patient needs care, the certifications state, "taking care of sick family member." *Id.* at 7. When asked to explain the care needed by the patient, and why the care is medically necessary, the certifications say simply: "needs to help family member who is sick." *Id.* at 8. Finally, when asked to explain the care needed by the patient, the certifications were simply left blank. *Id.*

The certifications here are unquestionably "vague, ambiguous, or non-responsive," and no reasonable jury could find otherwise. 29 C.F.R. § 825.305(c). Thus, the Court considers whether Plaintiff was given the opportunity to correct her deficient certification. 29 C.F.R. § 825.305(c). After receiving the certification, Defendant convened a meeting between Plaintiff, Defendant's director of human resources, and an advisor to the CEO. ECF No. 60-4 at 44:8–20. During this

7

meeting, Plaintiff was informed that her request for FMLA leave was going to be denied unless the "doctor goes into details" regarding the reasons why she needs time off. *Id.* at 46:3–5.[2] Plaintiff refused to ask the doctor to provide further details as she believed that it was "not HARC business." *Id.* at 46:6. After this meeting, and instead of providing further information, Plaintiff decided to submit her resignation, effective immediately. ECF No. 48-15; ECF No. 60-4 at 47:22–24. Given that Defendant told Plaintiff her certification was inadequate and gave her a chance to cure the deficiency, and given that Plaintiff opted to resign instead of curing the deficiency, Defendant's denial of Plaintiff's request for leave was not a violation of her rights under the FMLA. *See Porter*, 484 F. App'x at 591; *Blodgett*, 2019 WL 2913844, at *5.

In opposition, Plaintiff focuses almost exclusively on whether the condition of Defendant's husband qualified as a serious health condition. ECF No. 60-1 at 8–12. Plaintiff's opposition only briefly touches upon the issue of insufficiency of the certifications her doctor provided to Defendant. It is possible that Plaintiff's husband was suffering from severe depression that would constitute a serious health condition under the FMLA such that Plaintiff was entitled to leave to take care of him. Before that becomes relevant, however, the Court must determine whether Defendant was given adequate information to be able to make such a determination. Clearly, Defendant was not.

Plaintiff further argues that to the extent the certification was deficient, Defendant should have called the doctor's office pursuant to the procedures outlined in 29 C.F.R. § 825.307 and followed up directly with further inquiries. This argument also falls short. Section 825.307

---

[2] The Court notes that Plaintiff testified during her deposition that at this meeting, Defendant's employees informed her that the certification looked "fraudulent" and that it did not "look legit." ECF No. 60-4 at 45:5–25. Even assuming Defendant's representatives made these statements, Plaintiff has provided the Court no case law, and the Court has found none, which supports the proposition that such an accusation deprives the Plaintiff of her rights under the FMLA.

provides that "*if the employee submits a complete and sufficient certification* signed by the health care provider, the employer *may not* request additional information from the health care provider" except under certain limited circumstances. *Id.* (emphases added). The inverse of the regulation's text—that if the employee *does not* submit a complete and sufficient certification, the employer *may* request additional information from the provider—is not necessarily true, however. Such a situation is governed by § 825.306(e), which requires that the employee explicitly authorize the employer to speak with the provider.

While Plaintiff does not discuss § 825.306(e) in her opposition, the Court will. This regulation allows an employee to "choose to comply with the certification requirement by providing the employer with an authorization, release, or waiver allowing the employer to communicate directly with the health care provider," 29 C.F.R. § 825.306(e). Drawing all reasonable inferences in favor of Plaintiff, the Court construes Plaintiff's statement to her doctor's office that she knew "Annette" as permission for the doctor's office to speak with Defendant about the certification. But even after that conversation, Plaintiff's doctor's second certification still failed to answer basic, material questions about Plaintiff's husband's health situation and gave confusing, conflicting answers to others, as described above. The addition of the line stating that Plaintiff's husband had a "workup pending" for behavioral health issues did not remedy the otherwise deficient certification. The regulations state that if the certification provided is insufficient, the employer must give the employee seven days to cure the deficiency; if it is "not cured in the resubmitted certification, the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(c). Here, rather than cure the persistent deficiencies, Plaintiff immediately resigned after the conversation in which the deficiencies were brought to her attention.

In sum, it is the employee's responsibility to submit a complete and sufficient certification. 29 U.S.C. § 2613(a); 29 C.F.R. §§ 825.305(c), 825.306(e).  While the regulations allow several ways for Plaintiff to obtain a sufficient certification, it was her responsibility to do so, and nothing in the statute or the regulations shifts that responsibility to Defendant.  Thus, even drawing all reasonable inferences in favor of Plaintiff, she has not stated a claim for FMLA interference under these facts.

For the avoidance of doubt, this decision need not and does not determine whether Plaintiff's husband had a serious health condition such that Plaintiff was entitled to FMLA leave or whether Defendant actually denied Plaintiff such leave.  Instead, it is clear that Plaintiff failed to submit an adequate certification.  Regardless of any other findings, it could not have been a violation of Plaintiff's rights under the FMLA for Defendant to act in the manner that it did.  Defendant is thus entitled to summary judgment.

### IV. CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is GRANTED in full.  The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 16th day of September, 2022.

                                             */s/ Sarala V. Nagala*
                                             SARALA V. NAGALA
                                             UNITED STATES DISTRICT JUDGE